IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ERIC GRANT | : | NO. 09-337 |

## MEMORANDUM

**Padova, J.**                                                                                    **November 19, 2009**

Defendant Eric Grant has been charged with being a felon in possession of a firearm. Presently before the Court is Defendant's Motion to Suppress the firearm, which Defendant discarded while fleeing from police officers. Defendant argues in the Motion that police officers seized him in the street without reasonable suspicion before he fled from them, and that the firearm that they subsequently recovered should therefore be suppressed as the fruit of that illegal seizure.

The following facts were developed at a November 3, 2009 hearing. On March 18, 2009, at approximately 9:45 p.m., two Philadelphia Police Officers, Robert McCarthy and Michael Hand, received a radio call regarding a person with a gun and a large fight on the highway at 9th and Huntingdon in Philadelphia, which is in a high-crime neighborhood. (N.T. 11/3/09 at 6-7; Gov't Exs. 8-10.) The officers, who were in a marked police car only two blocks away from 9th and Huntingdon, responded to the call. (N.T. 11/3/09 at 7, 54.) As they approached the intersection, proceeding westbound on Huntingdon, they observed a crowd of approximately 15-20 people on the southwest corner, a few people grouped on the northwest corner, and one additional individual – later identified as Defendant – also standing on the northwest corner, but apart from the others. (Id. at 8-9, 23, 65.) The officers observed Defendant remove his right hand from his waistband and adjust the front of his jacket. (Id. at 10, 42, 45.) Officer McCarthy, believing based on his experience that Defendant was

tucking a gun into his waistband, immediately said to Officer Hand: "Hand, Hand, I think he's got a gun." (Id. at 10, 16.) The officers then pulled their car into the intersection, angled the wrong way on Ninth Street, with their headlights on Defendant. (Id. at 10.) They exited the car, with their hands on or near their visible but holstered guns, and Officer McCarthy yelled to Defendant: "Show me your hands." (Id. at 10-11, 15-16, 35, 67-68.) Defendant responded "Who, Me?" (Id. at 46.) The officers moved in Defendant's direction, repeating the order that Defendant show his hands.[1] (Id. at 32, 49, 73.) Defendant backed away from the officers about four or five steps, with his hands still at his waistband. (Id. at 11, 46.) On the last of his retreating steps, Defendant very briefly raised his hands, for possibly two seconds, and then he turned and ran northbound on Ninth Street, away from the officers. (Id. at 11, 33, 52.) The time between Officer McCarthy's first directive to Defendant to show his hands and Defendant's flight was approximately 10 seconds. (Id. at 46.)

Both officers ran after Defendant. (Id. at 12.) As they ran, Officer McCarthy observed Defendant's elbow come out, with his hand towards his waistband. (Id..) Officer McCarthy, believing Defendant to be reaching for a gun, yelled "Mike, Gun, Gun, Gun," and continued to chase Defendant. (Id. at 12-13.) Officer McCarthy then observed Defendant throw a dark object, which landed on the ground with a clanging sound. (Id..) Officer Hand, who was a couple of feet behind Officer McCarthy, scooped up the gun as he ran. (Id. at 53.) Shortly thereafter, Officer McCarthy caught up with Defendant and he, with Officer Hand's assistance, handcuffed Defendant over Defendant's resistance. (Id. at 14-15, 78-79.) The firearm that was recovered was an operable Smith and Wesson 9 millimeter handgun, loaded with ammunition. (Id. at 17.) Thereafter, the Government

---

[1]Officer Hand testified that they might have also ordered Defendant to take his hands out of his pockets, or to stop, but he did not specifically recall. (Id. at 68-71.)

charged Defendant with being a felon in possession of a firearm.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Courts may exclude evidence from being admitted at trial if it was obtained during the course of an unreasonable search or seizure. Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). When a defendant asserts that evidence was obtained in an unlawful seizure, the first question a court must ask is whether the defendant was seized. United Sates v. Smith, 575 F.3d 308, 313 (3d Cir. 2009) ("[A]ny seizure inquiry has two steps: Was there in fact a seizure? If so, was that seizure reasonable?"). "A seizure occurs when there is either (a) 'a laying of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006)(quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). "Put another way, when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force." Id. (quoting Hodari D., 499 U.S. at 625-26). "In contrast, if a suspect in the absence of physical force does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim." Id. (citing Hodari D., 499 U.S. at 626-27). Notably, momentary compliance with an officer's orders is not a submission to a show of authority that can effectuate a seizure in the absence of physical force. Id. at 246 (recognizing that momentary compliance is not sufficient to consummate a seizure); United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) (same); United States v. Waterman, 569 F.3d 144, 146 & n.3 (3d Cir. 2009) (suggesting that submission requires something more than a momentary pause or mere inaction).

The facts of this case are very similar to those in California v. Hodari D., which concerned

a defendant who dropped drugs while fleeing from police. <u>Hodari D.</u>, 499 U.S. at 623. The Supreme Court considered the question of "whether, at the time [the defendant] dropped the drugs, he had been seized within the meaning of the Fourth Amendment," explaining that if he had been seized, the drugs were arguably "the fruit of that seizure." <u>Id.</u> at 623-24. On the other hand, the Court explained, if the defendant had not been seized, "the drugs were abandoned by [him] and lawfully recovered by the police, and the evidence should have been admitted." <u>Id.</u> at 624. The Court concluded that there had been no seizure before the police tackled the defendant in that case, because the defendant had not complied with the officers' order that he stop. <u>Id.</u> at 629. Thus, the Court found that the contraband that defendant "abandoned while he was running was . . . not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." <u>Id.</u>

Like the defendant in <u>Hodari D.</u>, Defendant Eric Grant was actively fleeing from law enforcement at the time that he threw aside his gun, and no police officer laid his hands on Defendant or applied any physical force to restrain Defendant's movement until <u>after</u> Defendant discarded his weapon. The only question then is whether Defendant submitted to the officers' authority prior to his flight, such that the abandonment of the gun could potentially be characterized the product of a seizure. Defendant argues that he submitted to the officers' authority, and therefore was seized, at the moment that he raised his hands in response to Officer McCarthy's order to show his hands. However, as explained above, mere momentary compliance with an officer's directive is not sufficient to effectuate a seizure. <u>Brown</u>, 448 F.3d at 246; <u>Valentine</u>, 232 F.3d at 359; <u>Waterman</u>, 569 F.3d at 146 & n.3. Indeed, the testimony received at the hearing makes clear that Defendant's raising of his hands was almost simultaneous with his commencement of his flight and, thus, simply cannot be considered a submission to authority, which consummated a seizure.

Defendant takes the position that his compliance was more than momentary and therefore constituted submission to the officers' authority, but analogous caselaw supports a contrary conclusion. See, e.g., Smith, 575 F.3d at 316 ("Two steps towards the hood of a car does not manifest submission to the police officers' show of authority."); Valentine, 232 F.3d at 359 ("Even if [the defendant] paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure until [the law enforcement officer] grabbed him."); United States v. Samuels, 131 Fed. App'x 859, 862 (3d Cir. 2005) (finding no seizure where defendant raised one hand in response to police officer's order to put his hands up); United States v. Focareta, Crim. No. 05-227, 2006 WL 2087515, *7 (W.D. Pa. July 25, 2006) ("The fact that [the defendant] may have momentarily complied with [the officer's] order to place his hands on the Lexus is not sufficient to show submission to the officer's orders." (citing Valentine, 232 F.3d at 359)). We therefore conclude that Defendant was not seized before he fled from the police officers and the discarded gun was not the fruit of a seizure.

Moreover, even assuming *arguendo* that Defendant was seized at the moment that he raised his hands in response to Officer McCarthy's directive, we find that any such seizure was supported by reasonable suspicion. To support a Terry stop, a police officer need only have "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion is "a less demanding standard than probable cause" and requires only "a minimal level of objective justification for the stop." Wardlow, 528 U.S. at 123 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). In evaluating the justification for a Terry stop, a court must examine the "'totality of the circumstances.'" Valentine, 232 F.3d at 353 (quoting Sokolow, 490 U.S. at 8). These include "[the defendant's] location, a

history of crime in the area, [the defendant's] nervous behavior and evasiveness, and [the officer's] 'commonsense judgments and inferences about human behavior.'" <u>Johnson v. Campbell</u>, 332 F.3d 199, 206 (3d Cir. 2003) (quoting <u>Wardlow</u>, 528 U.S. at 124-25). To make a showing of reasonable suspicion, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch of criminal activity.'" <u>Wardlow</u>, 528 U.S. at 123-24 (quoting <u>Terry</u>, 392 U.S. at 27). Where an anonymous tip is used to support reasonable suspicion, it should be accompanied by additional indicia of reliability, such as police corroboration of the facts in the tip, or the inclusion of a correct prediction of a future event. <u>See</u> <u>Alabama v. White</u>, 496 U.S. 325, 331-32 (1990). The Government bears the burden of demonstrating the reasonableness of a search or seizure by a preponderance of the evidence. <u>United States v. Spencer</u>, Crim. A. No. 02-788, 2003 WL 1594737, at *4 (E.D. Pa. Mar. 26, 2003).

In this case, the evidence demonstrates that the officers had ample reasonable suspicion to support a <u>Terry</u> stop. Although the evening's events commenced with an anonymous tip of a large fight and a person with a gun, the tip was partially corroborated when the officers arrived at the scene and observed an unusually large crowd on the corner of Ninth and Huntingdon. (N.T. 11/3/09 at 8.) In addition, the officers observed Defendant making hand movements that, in Officer McCarthy's experience, were consistent with an individual hiding a gun in his waistband. These facts, combined with the evidence that Defendant was in a high crime area and that he backed away from the officers when they approached him, were sufficient to establish that the officers were acting on more than an "'inchoate and unparticularized suspicion or hunch of criminal activity,'" <u>Wardlow</u>, 528 U.S. at 123-24 (quoting <u>Terry</u>, 392 U.S. at 27), and, instead, were acting on reasonable suspicion that Defendant had a weapon.

Consequently, we deny Defendant's Motion to Suppress the firearm.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.